Peelle, Ch. J.,
delivered the opinion of the court:
The claimant’s right to recover depends upon the force and effect to be given to the rules governing the docking of mer *195 chant vessels at the Pensacola Navy-Yard and the action of the government officers thereunder.
The rules under which the claimant company was permitted to dock its vessel, of which its officers in charge were advised, among other things provide:
“ 4. Vessels allowed' to enter the dock must furnish at their own expense such tugs as the commandant may direct to assist them in entering and leaving the dock.
“ 5. The Navy Department will undertake no work of any character on vessels permitted to use the dock.
“ 6. The TJ. S. Government will assume no responsibility for any damage or injury to a vessel, her crew, or appurtenances while she is entering, leaving, or while she is in dock.
“ 9. Applications for the use of the dock must be made to the Secretary of the Navy, through the commandant of the station, when circumstances permit.
“ 10. The persons or corporation to whom the privilege is granted of docking a vessel shall be responsible for all damage done to the dock or other government property, other than reasonable wear and tear, by persons employed by them on the vessel, or by contractors or other persons employed by them in connection with work on the vessel in the dock, and shall pay the cost of all necessary repairs or making good damage done, in addition to other charges herein provided.”
Under the settled custom prevailing at said navy-yard the docking and undocking of vessels was done entirely by the officers and employees of the United States, who took charge of the vessel at the moment it entered the dock; and, in accordance with that custom, the officers and employees of the United States took charge of the docking of the claimant’s vessel, and in doing so the bilge blocks placed to hold the vessel in position were so negligently placed that the weight of the vessel was thrown too much upon the blocks under the sides of the vessel instead of on the keel, upon which latter the weight of the vessel should have mainly rested. By reason of the negligence of the officers and employees of the Government in so placing the bilge blocks the interior structure of the vessel was damaged. Hence this action.
The navy-yards of the Government are under the control of the Secretary of the Navy; and whatever orders, rules, or regulations are issued by the commandants thereof are pre *196 sumed to be with the approval of the Secretary of the Navy. And if such orders, rules, or regulations be not in conflict with acts of Congress they have the force of law. (United States v. Symonds, 120 U. S., 47, 49; United States v. Eaton, 144 U. S., 677, 688.)
By the rules promulgated the Government was held out as willing to receive merchant vessels of a prescribed tonnage in its dock for the purpose of repair at the price therein stated, being the same substantially as that charged by private docks. This makes the transaction a mutual bailment, enjoining upon the officers and employees of the Government— the bailee — ordinary diligence in the execution of the contract.
The general rule — founded on the right of the master to select his own servants — is, that as between corporations and individuals it is against the policy of the law to permit contracts to be made against the negligence of their servants while acting within the scope of their employment. (Hexamer v. Webb, 101 N. Y., 377; Merchants' National Bank v. State National Bank, 10 Wall., 604; Frankfort Bank v. Johnson, 24 Me., 490; Kimball v. Cushman, 103 Mass., 194.) This rule is applicable to common carriers, warehousemen, wharfingers, elevators, storage companies, and all other corporations or individuals engaged in the business of receiving and caring for the property of others either for the purpose of hire or for the performance of work thereon, and places them in the class of mutual benefit bailments requiring ordinary diligence of the bailee. (Lincoln v. Gray, 164 Mass., 537; Zell v. Dunkle, 156 Pa. St., 353.) And it has been held that “When a Government enters into a contract with an individual it deposes, as to the matter of the contract, its constitutional authority and exchanges the character of a legislator for that of a moral agent, with the same rights and obligations as an individual.” (3 Hamilton's Works, 518; United States v. Bank of Metropolis, 15 Pet., 377, 392, cited in Southern Pacific Co. case, 28 C. Cls. R., 77, 105.)
This is not the case of an unauthorized wrong inflicted upon a citizen by an officer of the Government, nor for the misfeasance or nonfeasance of such officer, for which the *197 Government would not be responsible (United States v. Cumming, 130 U. S., 452, 455; German Bank v. United States, 148 U. S., 573, 579), but is a cause of action based on the nonperformance of the defendants through their agents in not handling the vessel with ordinary care while in their exclusive possession and control. In the construction of this contract the claimant contends that it is entitled to have applied the rules applicable as between corporations and individuals. (United States v. Gurney, 4 Cranch, 333, 341; Hunter v. United States, 5 Pet., 170, 185; United States v. Bostwick, 94 U. S., 53, 66; United States v. Smith, 94 U. S., 214, 217, and the Sinking Fund cases, 99 U. S., 700, 719.)
The rules are silent as to whether the docking of merchant vessels shall be done by the officers of the Government in charge of the dock or by the owners of vessels. If done by the owners of such vessels or their agents, then the provision against the nonassumption of liability by the Government is a reasonable one; but when done by the officers of the Government, as in the present case, the provision is an unreasonable one. If, however, the provision applies in the latter case and the Secretary of the Navy has not exceeded his authority in adopting the provision, still it can not be so construed as to excuse the officers of the Government having to do therewith from the exercise of ordinary care; and if not, then who shall suffer for their negligence, the Government, who employs them, or the claimant, whose vessel in an unseaworthy condition seeks a place of safety for repair to enable her to continue her commercial engagements?
The parties were not on equal terms, and the owner of the vessel had no voice in the making of the rules, and, in the present case, no voice in the docking plans under which the vessel was docked.
When the officers of the Government took charge of the vessel the contract enjoined upon them the exercise of ordinary care in docking the same, notwithstanding the provision referred to; hence failure to exercise such care was negligence on their part.
Now, shall the court hold that although the contract enjoined upon the officers of the Government the exercise, of *198 ordinary care they could disregard it to the detriment of the claimant because of the provision referred to ?
True, the Government, by virtue of its sovereignty, can not be sued without its consent, but by section 1 of the act of March 3, 1887 (24 Stat. L., 505), the Court of Claims is given jurisdiction to hear and determine “ all claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for' damages, liquidated or unliquidated, in cases not sounding-in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable.”
That statute, therefore, in express terms gives the court jurisdiction to hear and determine all claims founded upon “ any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States.” The vessel was docked under the regulations forming the contract, without which she could not have been docked in the government yard; the consideration stipulated for was paid by the owners of the vessel and accepted by the Government; the care and attention impliedly promised on the part of the defendants was not given. Therefore the injury to the vessel through want of ordinary care on the part of the officers of the Government in the execution of the contract was a breach, thereby giving the owners a right of action for the damages arising therefrom.
The claim, therefore, is one founded upon the contract, but for which there would be no right, as the action rests on the conventional duty created by the contract and not for breach of duty imposed by law independent thereof.
The claim being founded upon the contract the claimant may, under the statute cited, maintain an action thereon to have its rights determined. When Congress conferred upon this court jurisdiction to hear and determine claims founded upon contract it evidently meant such contracts as would be enforcible between corporations and individuals under like conditions.
*199 It has likewise been assumed on the part of the Govern-, ment that the rules, which make the contract, expressly exempted the defendants from liability for the acts or inaction of their agents, and the sixth rule does say that “ the United States will assume no responsibility for any damage or injury to a vessel, her crew, or appurtenances while she is en-, tering, leaving, or while she is in dock.”
But this does not mean, and can not be construed to mean, that the defendants need not perform their part of the contract by exercising ordinary diligence and skill in disposing of the vessel while it was in their hands. A much more reasonable construction will be to say that the Government will assume no responsibility for the acts of the owners’ agents, or for the acts of third persons, or for any disaster occurring to the dock or to the vessel while in dock; but to hold that this rule authorized the government’s agents to do what they pleased with a vessel would, in effect, be to construe a contract so that one party should be wholly exempt from liability for his own nonperformance or for defective performance. This would clearly be against public policy and needs no citation of authorities to support it, but see the case of Morningstar v. Cunningham, (110 Ind., 328). And this principle applies, though there may be a “ special agreement for ordinary neglect; that is to say, for the want of ordinary diligence.” (Christianson v. American Express Co., 15 Minn., 270; Wyld v. Pickford, 8 Mees. & Wells., 443.)
But it is not necessary to go so far; the rules, as we have seen, do not go to the extreme length of exempting the defendants from liability for their own failure to carry out their own part of the agreement, and they should not be so construed. The whole of the case is this: The claimant employed the defendants to dock the vessel at a stipulated price, and paid for it; the defendants, failing to exercise ordinary care and skill, neglected to perform as they had agreed to, and are, therefore, liable for the direct damages resulting, from their breach of contract.
A contract to relieve from responsibility for negligence diminishes the motive for the performance of duty and takes from the public the security it would otherwise have and is, *200 therefore, against public policy. (Telegraph Co. v. Griswold, 37 Ohio St., 301, and authorities there cited.)
That the officers and employees of the Government were negligent in docking the vessel in the way it was done seems clear, and the court has so found. Now, to hold, under the regulations prepared by the Secretary of the Navy — in which the claimant had no voice — that the Government is not responsible for the breach of contract on the part of its officers and employees resulting in damage to the claimant, would be putting a premium on the negligence of such, officers and employees in the discharge of their duty to the public as well as to the individuals dealt with. This as between corporations and individuals would be against public policy, and we are aware of no authority which would justify the court in excepting the Government from the operation of that rule.
In the case of the World's Columbian Exposition Co. v. Republic of France (96 Fed. Rep., 687), involving the question of the construction of a regulation promulgated by said company to the effect that while the corporation would take reasonable precaution for the preservation of exhibits it would “not be responsible for any damage to, or for the loss or destruction of an exhibit, resulting from any cause,” the court said: “ We have no doubt of the validity of the exempting clause here in question, to the extent, at least, of any negligence not chargeable to the board of directors or managing officers of the exposition company, and not of a distinctly gross or wanton or willful character.” But as such negligence was not charged in any count of the declaration in that case, the court reversed the judgment below.
From the language used we think it may fairly be inferred that had the loss been charged as a result of the negligence of the board of directors or managing officers of the exposition company, or to the gross, wanton, or willful negligence of the employees, the result would have been different. Though the court in that case said there was at most a bailment for the benefit of both parties we think the transaction falls short of a mutual benefit bailment in this, that the exposition company was not engaged in the business for remuneration beyond what was necessary to defray the expenses of the exposition, and for that reason the relation *201 between the exposition company and the exhibitors more pearly approximates a bailment for the sole benefit of the bailor than a bailment for mutual benefit.
Nor can we hold that, because the agents of the claimant company were present at the docking of its vessel and made no examination for themselves, they are therefore chargeable with contributory negligence. The docking was done entirely by the officers and agents of the Government, as set forth in the. findings, and, too, by measurements and plans of their own making, they having refused to use the plans for docking the vessel provided by the claimant company, although the vessel had been successfully docked by said plans at Philadelphia, Baltimore, and Newport News. The Government having elected to prepare and use-docking plans of its own, the claimant company might have been chargeable with contributory negligence had its officers or agents interfered with the docking or secured changes in the Government docking plans, especially after the plans submitted by the claimant company had been rejected. But whether the injuries resulted from defective plans or from failure to follow correct plans is immaterial since the injuries resulted from the want of ordinary care on the part of the officers of the Government at a time when they, had assumed for the defendants entire control and responsibility for the safety of the vessel.
Having reached the conclusion that the Government is liable for the injuries to the vessel so caused by the nonperformance of its officers and employees in the execution of the contract, the final question is, What items of expense charged, as set forth in the findings, are recoverable?
The rule is that the injuries for which a recovery may be had must result proximately from the negligent acts charged; that is to say, the injuries must result from the natural and continuous sequence of the negligent acts' complained of.
Applying the rule stated, we have set forth in Finding XII the items chargeable directly to said acts, and prorated the bid of $6,315 upon the basis of the three bids for the separate injuries set forth in Finding VIII, by which it is shown that the injury so sustained at the Pensacola dock is *202 $4,488.55, or $1,291.45 less than the separate bid for said injury, exclusive of the charge for nine days’ loss of time of the vessel while undergoing repairs at the Newport News dock amounting to $2,700, which latter amount we have also prorated upon the basis of said three bids and the amount paid by special arrangement ($2,270) for injuries resulting from the grounding of the vessel, as set forth in Finding X. By this method the fair and reasonable proportion of the amount chargeable to the injuries at the Pensacola dock is $1,267.65, which amount added to the $4,488.55 makes $5,756.20. The other items claimed for, as set forth in Finding XI, do not appear to the court to come within the rule announced and are excluded.
Judgment will be entered in the claimant’s favor for $5,756.20.