**RHODES v. UNITED STATES.**

No. 13522.

District Court, E. D. New York.

June 6, 1934.

See, also, Rhodes v. United States Shipping Board Emergency Fleet Corp., 8 F. Supp. 123.

Slayton & Jackson, of New York City, and G. Noyes Slayton, of New York City, for libelant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y., and William E. Collins, Sp. Asst. to U. S. Atty., of New York City, for the United States.

CAMPBELL, District Judge.

This is a suit for cargo damage.

At all the times hereinafter mentioned and at the time of the trial, the libelant was a resident of the borough and county of Queens, city and state of New York.

At all the times hereinafter mentioned, the steamships President Jackson and President Jefferson were owned by the respondent, United States of America, and employed as merchant vessels.

On or about the 21st day of April, 1925, the libelant commenced an action on the law side of this court against the United States Shipping Board Emergency Fleet Corporation, the Admiral Oriental Line, and Northern Pacific Railway Company, 8 F. Supp. 123.

That case was not brought on for trial but was, when reached for trial, marked "off," as respondent contends because of unexecuted letters rogatory issued to Japan.

On January 6, 1930, the United States Supreme Court decided Johnson v. Fleet Corporation, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451, holding that in actions against the United States of this character, the Suits in Admiralty Act (46 USCA § 741 et seq.) furnished an exclusive remedy in admiralty.

No proceedings were taken in that action, and, on the general calendar call ordered by the court, on March 1, 1930, that case was, on the court's own motion, pursuant to rule 28 of the General Rules of Practice of this court, dismissed without prejudice, because of failure to take any proceedings in that action since December 31, 1928, and an order to that effect entered on March 6, 1930.

A motion was thereafter made by the plaintiff originally returnable on May 7, 1930, on which day it was submitted, all papers by May 14, 1930, for a modification of the order of dismissal as against the defendants Admiral Oriental Line and Northern Pacific Railway Company, as to whom the Supreme Court decision in Johnson v. Fleet Corporation, supra, might not apply, and, by order entered June 2, 1930, the court vacated the order of dismissal as against the said defendants Admiral Oriental Line and Northern Pacific Railway Company.

This suit is alleged to be maintained pursuant to the Act of Congress approved March

9, 1920, 41 Stat. 525, entitled "An Act Authorizing suits against the United States in admiralty, * * * " as amended June 30, 1932, chapter 315, 47 Stat. 420 (46 USCA § 741 et seq.), as against the United States, it being based upon a cause of action on which an action at law had been commenced April 21, 1925, against the United States Shipping Board Emergency Fleet Corporation et al. The said act of June 30, 1932 (46 USCA § 745), amending section 5, reads as follows:

"Suits as authorized in this chapter shall be brought within two years after the cause of action arises: Provided further, That the limitations in this section contained for the commencement of suits hereunder shall not bar any suit against the United States or the United States Shipping Board Merchant Fleet Corporation, formerly known as the United States Shipping Board Emergency Fleet Corporation, brought hereunder on or before December 31, 1932, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law or an action under subdivision (1) of section 250 of Title 28, was commenced prior to January 6, 1930, and was or may hereafter be dismissed because not commenced within the time or in the manner prescribed in this section, or otherwise not commenced or prosecuted in accordance with its provisions: Provided further, That such prior suit must have been commenced within the statutory period of limitation for common-law actions against the United States cognizable in the Court of Claims: Provided further, That there shall not be revived hereby any suit at law, in admiralty, or under subdivision (1) of section 250 of Title 28 heretofore or hereafter dismissed for lack of prosecution after filing of suit."

On or about August 16, 1924, at Yokohama, K. Kobayshi shipped on board the steamship President Jackson 260 cases containing lily bulbs, of which he was the owner, in apparent good order and condition, consigned and to be delivered unto order, at New York, N. Y. Notify Messrs. Henry & Lee, 97 Water street, New York, N. Y., which in consideration of a certain agreed freight paid or agreed to be paid by said K. Kobayshi, were accepted as in apparent good order and condition, and a bill of lading issued, which bill of lading contained the following exception:

"It is also mutually agreed that the carrier shall not be liable for loss or damage occasioned ...... for or by heating ......"

The said bill of lading also contained the following provision:

"No claim arising under this Bill of Lading is valid unless made in writing by consignees to carrier's agent at the port of discharge, if for matters discoverable in all or in part without opening the packages before removing the goods from the dock, or if for matters discoverable only by opening the packages within ten days from the delivery thereof, or if for nondelivery of the goods, within twenty days after discharge of vessel, or her departure from port of delivery."

The steamship President Jackson had had boiler trouble and had undergone repairs, which, in the opinion of the surveyor of the American Bureau of Shipping, then in Yokohama, rendered the said vessel seaworthy, and the owner of said vessel had, before the said vessel sailed, used due diligence to make her seaworthy.

The lily bulbs were packed in Japanese white wood boxes, newspapers being placed therein so that the dirt would not get out, and the bulbs were packed in dirt supposed to be particularly suited to that use, then covered with newspaper, and the wooden cover placed on the box.

On or about the 19th day of August, 1924, the said steamship President Jackson sailed from Yokohama for Seattle, state of Washington, United States of America, with the said cargo laden thereon. About five or six days after leaving Yokohama, the steamship President Jackson again met with boiler trouble and put back to the port of Yokohama where she arrived on the 25th day of August, 1924.

The cargo was then taken to the steamship President Jefferson in covered lighters, and was, when received, in apparent good order and condition, and was not loaded during showers or rain.

In all there were 2,598 cases of lily bulbs shipped by various shippers on the steamship President Jackson and stowed in lower holds 2, 3, and 7, of which 1,683 cases were transhipped to the steamship President Jefferson.

The time required for making repairs on the President Jackson would have delayed the said cargo, and therefore it was, on the 27th or 28th day of August, transhipped from the steamship President Jackson and reloaded on the steamship President Jefferson which had arrived on August 26, 1924, and was then lying in the port of Yokohama and

bound for Seattle, and all lily bulbs of all shippers were stowed in lower holds 2 and 3.

The said cargo was taken to the steamship President Jefferson in covered lighters, and received aboard that vessel in apparent good order and condition, and was not loaded in showers or rain.

On or about the 29th day of August, 1924, the steamship President Jefferson sailed from Yokohama with said cargo on board.

Both on the steamship President Jackson and the steamship President Jefferson, the said cargo was properly stowed in lower holds, the coolest part of the vessel, removed from the engine room, and properly ventilated. On the steamship President Jackson the ventilators, which were sufficient for that purpose, were relied on, and on the steamship President Jefferson, in addition to the ventilators, the corner hatches were raised during clear weather each day.

On or about the 7th day of September, 1924, the steamship President Jefferson arrived at Seattle, and on or about the 9th day of September, 1924, discharged the said cargo and delivered it to the Northern Pacific Railway Company in apparent good order and condition, and without any exception being taken by the railway company.

The conversation which Craig, the checker for the Admiral Oriental Line, testified to having had with Willerling, the checker for the Northern Pacific Railway, was subsequent to the delivery of the cases of bulbs to the railway, and undoubtedly after Craig had heard of the claim of damage.

The Northern Pacific Railway Company loaded said cargo on a ventilated car, which was not iced but it was ordered that all the ventilators were to be left open to give a circulation of air.

This was during the heated season of the year.

On or about the 22d day of September, 1924, the said cases of bulbs were unloaded at the St. Johns Park station of the New York Central Railroad, New York City, where they had arrived on the 21st or 22d of September, 1924.

The said cases were in apparent good order and condition, there being no marks or stains on the outside of the cases.

On opening some 12 of the cases it was found that some of the bulbs were good, but that many of the bulbs were shriveled and dried up, and many of them had a foul odor.

Notice of damage but not notice of claim was given by the consignee, and it was agreed that the packages should be taken to the consignee's warehouse and there opened in the presence of representatives of the parties, and customs authorities.

This was done. On October 7, 1924, a written notice of claim was given to the railway company, and on October 17, 1924, written notice of claim was given to the Admiral Oriental Line.

The lily bulbs in such cases turned out in such poor condition that the only way found of disposing of them was by public auction.

The amount received was very small, and the shipper suffered a large loss.

There were shipped on the said steamship President Jefferson by various shippers 2,149 cases of bulbs, 1,683 cases of which were transhipped from the steamship President Jackson, all of which received relatively the same care, and the shipment in question was the only one in which there was any claim of damage to the bulbs.

The damage is claimed to have been caused by heat, which is an exception in the bill of lading.

The shipper K. Kobayshi assigned the cause of action herein to the libelant.

The shipper, as appears from his evidence given in Japan, did not know how long the bulbs were in the warehouse before shipment, and he had been sued by the consignees for damages in connection with this cargo, but did not produce a copy of the complaint.

The testimony of Mariya, a plant inspector, given in Japan, was hearsay, but he did say that only five baskets were usually inspected out of a hundred.

The testimony of Tasaki, given in Japan, shows that he did none of the packing himself; that one bad bulb would spoil the rest in the box; and that there were from 50 to 400 bulbs in each case.

There was no testimony given in Japan by those who actually inspected these bulbs.

The first question presented is the validity of the assignment.

■ While it is true that the assignment of a claim against the United States is forbidden, the claim assigned herein was originally against the United States Emergency Fleet Corporation, and assignments of claims against that corporation are not forbidden. Charles Nelson Co. v. United States (D. C.)

11 F.(2d) 906; Providence Engineering Corp. v. Downey Shipbuilding Corp. (D. C.) 3 F.(2d) 154.

The second relates to the jurisdiction of this court.

■ The common-law action commenced by the libelant as plaintiff, on March 20, 1925, was dismissed by this court without prejudice, by order of June 2, 1930, on its own motion, to clear its calendar, because no proceedings had been taken therein since the 31st day of December, 1928. The suit was not dismissed for lack of prosecution on the motion of any of the defendants, and at the time of the dismissal by this court, the action could not be maintained, under the decision of the Supreme Court in Johnson v. Fleet Corporation, supra, and as this court said in its opinion of May 16, 1930, Rhodes v. United States Shipping Board Emergency Fleet Corp., 8 F. Supp. 123, "and although it would appear that the court is without jurisdiction, still if it can be shown that the agent would have no right of indemnity against the United States, jurisdiction will exist as against the defendants, the Admiral Oriental Line and Northern Pacific Railway Company, and the plaintiff should be allowed an opportunity to make that proof." Therefore the dismissal was not really for failure to prosecute, although it had been at issue for about five years, but because it could not be maintained after that decision was rendered.

It is a close question but it does not seem to me that in the face of the remedial character of that act, such dismissal is one contemplated by the Act of June 30, 1932, supra, which in part provides "that there shall not be revived hereby any suit at law * * * heretofore or hereafter dismissed for lack of prosecution after filing of suit."

■ The third has to do with the failure of the libelant to show proof of compliance with the notice of claim clause. This clause has been hereinbefore quoted, and, under its terms, the libelant or her assignor can have no valid claim under the bill of lading unless it was made in writing by the consignee to the carrier's agent within ten days from the delivery of the cases of lily bulbs in question.

If the notice clause of the bill of lading, supra, meant that the notice in question related to the removal of the goods from the dock at Seattle, or within ten days thereafter, then there was no compliance, as the cargo in question was discharged at Seattle on September 9, 1924, and there was not even

a written notice of damage given by the consignee until September 24, 1924, and no notice of claim was given by the consignee to the railway until October 7, 1924, and to the Admiral Oriental Line until October 17, 1924.

If the notice of claim required by that clause relates to the delivery at New York, then it was too late, as the merchandise was delivered to the consignee on September 24, 1924, and no notice of claim was given by the consignee to the railway until October 7, 1924, and to the Admiral Oriental Line until October 17, 1924.

In either event the ten-day period had elapsed before notice of claim was given.

Compliance with notice of claim clause is necessary to recovery. H. Schnell & Co. v. United States (C. C. A.) 30 F.(2d) 676, 1929 A. M. C. 286; Cudahy Packing Co. v. Munson S. S. Line (The Lake Orange) (C. C. A.) 22 F.(2d) 898, 1928 A. M. C. 186; The General G. W. Goethals (C. C. A.) 298 F. 935, 1924 A. M. C. 739.

■ That the railway had notice of damage and that the consignee gave written notice of damage as early as September 24, 1924, is undoubtedly true, but knowledge of the damage by the railway, or written notice of damage given by the consignee, does not relieve from the requirements of the clause to give notice of claim. It therefore seems to me that for failure to give written notice of claim within the ten-day period, libelant cannot recover, but I do not care to rest my decision on that point alone, as I am convinced that libelant should not recover on the merits.

On the facts as found, the 260 cases of bulbs in question were shipped on the steamship President Jackson, at Yokohama, in apparent good order and condition. The vessel was seaworthy, and the owner had used due diligence to make her seaworthy. The cases of bulbs were properly stowed, in the coolest part of the ship, and had sufficient ventilation from the ventilators. When trouble developed with the boilers of the steamship President Jackson, she returned to Yokohama, about five or six days after she had left. The boiler trouble had no effect on the cargo.

The cases of bulbs were transferred to the steamship President Jefferson at Yokohama, and properly stowed in lower holds, the coolest part of the ship, and ventilated not only by the ventilators but also by raising the corner hatches when proper. In loading on the steamship President Jackson and

in transferring from her to the steamship President Jefferson, the cases of bulbs were carried on covered lighters, and were not loaded in the rain. The cases of bulbs were delivered to the railway company at Seattle without exception by its checker, and all of the cases then, and, even when delivered at New York to the consignee, were in apparent good order and condition, there being no marks or stains on the exterior of the cases. The cases of bulbs were transferred to the Northern Pacific Railway car at Seattle, on September 9th and arrived at New York on September 21st or 22d, an elapsed period of twelve or thirteen days.

It is true that they were in a refrigerator car but no ice was used, dependence being placed on the ventilators, which would undoubtedly result in a forced draft when the car was in motion, but would be no protection from the heat when the car was standing still.

■ The damage was claimed to be the result of heating and decay, which is excepted by the bill of lading, and recovery cannot be had except by proof of negligence on the part of the respondent. The Milwaukee Bridge (C. C. A.) 26 F.(2d) 327; The Isla de Panay, 267 U. S. 260, 45 S. Ct. 269, 69 L. Ed. 603; The Bencleuch (C. C. A.) 10 F.(2d) 49; The Good Hope (C. C. A.) 197 F. 149.

The libelant has failed to show any negligence on the part of the respondent.

The damage was concealed damage, but, as between the steamship and rail carriage, the damage from heat would more likely have occurred in the carriage by rail, and Michell and Irwin, experienced bulb importers, had that opinion; but in my opinion the damage was due to inherent vice in the bulbs.

The evidence taken in Japan was not convincing, much of it hearsay, the number of bulbs actually inspected small, and those who actually made the inspections did not testify, nor did those testify who actually did the packing. The shipper did not know how long the bulbs had been in the warehouse before shipment, and, although he had been sued by the consignees for damages in connection with this cargo, did not produce a copy of the complaint.

Many causes might be cited which would account for the damage, among which are packing in soil that was not sufficiently moist, pulling the bulbs too early, and permitting them to dry out too much before shipping, and these have not been eliminated by the evidence taken in Japan.

Another fact which is of great significance is that 1,683 cases of the bulbs which were originally shipped on the steamship President Jackson were transhipped on the President Jefferson, all similarly stowed and handled, and claim of damage was made only as to the 260 cases in question, and from this fact I draw what I believe to be the reasonable inference that the bulbs in the 260 cases in question were affected with an inherent vice. The Maine, 1927 A. M. C. 201.[1]

The consignees evidently had the same opinion on September 29, 1924, when they sent to the shipper's agent the letter demanding reimbursement of the amount paid, in which the bulbs were alleged to be "decayed and diseased."

■ There is no evidence of negligence on the part of the carrier. The bulbs were subject to inherent vice as a result of which they might turn out damaged at the end of the carriage, and there is an inference of inherent vice. The Maine, supra; Monnier v. United States (D. C.) 16 F.(2d) 812, affirmed (C. C. A.) 16 F.(2d) 815; The St. Quentin (C. C. A.) 162 F. 883, certiorari denied, 212 U. S. 574, 29 S. Ct. 683, 53 L. Ed. 656; The M. C. Currie (D. C.) 132 F. 125; The Muskegon (D. C.) 10 F.(2d) 817, 1924 A. M. C. 1512.

Libelant cites The Vestris (D. C.) 38 F.(2d) 992, but it is clearly distinguishable on the facts, as in that case the contract called for refrigerator stowage of fresh fruit, and the fruit which was damaged had been placed in an unrefrigerated compartment, and insufficient space was left between the cases.

The damage to the bulbs in question was occasioned by causes excepted in the bill of lading, and the libelant has failed to establish, by a fair preponderance of the evidence, any negligence on the part of the respondent, and respondent is entitled to a decree against the libelant, dismissing the libel with costs.

A decree may be entered in accordance with this opinion. Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.

---

[1] Summary only.