## NEW RAWSON CORPORATION v. UNITED STATES.

### No. 2352.

District Court, D. Massachusetts.

April 3, 1943.

Maurice Palais and Joseph B. Abrams, both of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This action is brought by the Rawson Realty & Construction Co., Inc. (hereinafter called Rawson) under the provisions of 28 U.S.C.A. § 41(20) for an untenantable use of the premises numbered 176–194 Ipswich Street, Boston, Massachusetts, which the defendant leased as a post office garage from March 23, 1929 to October 31, 1941. Under successive leases the government was continuously in possession of the premises between the dates November 1, 1928, and February 28, 1942.

On July 28, 1941, notice was sent to the then Postmaster at Boston of a claim for damage done to the premises by negligent use together with an estimate of the damage amounting to $6,150 made by one S. S. Eisenberg, an architect and engineer.

On October 14, 1941, a receiver was appointed by the Massachusetts Superior Court for Rawson and a final decree was entered in those proceedings on July 13, 1942, approving (1) a conveyance July 8, 1942 by the receiver for Rawson to The New Rawson Corporation (hereinafter called New Rawson) of all Rawson's right, title and interest in the premises numbered 176–194 Ipswich Street, and (2) the execution of a bill of sale to the latter corporation on the same date of all personal property owned or claimed by Rawson.

■ Because of these conveyances by the receiver of the Massachusetts court, I allowed New Rawson to become a party plaintiff to this suit to dispose of the case with a single hearing. It seems apparent from these sales that the latter corporation is the present holder of the legal title to the claim sued on in this action and the real party in interest in whose name the suit must be brought. Rule 17(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Both corporations are represented by the same parties in interest. Rawson is dropped from these proceedings by order of the court. Rule 21, Federal Rules of Civil Procedure. It has, on the face of the transfers, no interest in the claim sued on.

The question presented at the outset is: Has New Rawson the right to sue in this court?

■ It seeks to maintain its action under the Tucker Act, which allows suits for claims "upon any contract, express or implied, * * * or for damages, liquidated or unliquidated, in cases not sounding in tort, * * *." 28 U.S.C.A. § 41(20). It has been held that there can be no recovery under this provision on a contract implied in law (usually denominated a quasi-contract, Restatement, Contracts, Sec. 5) as distinguished from a contract implied in fact. Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; G. T. Fogle & Co. v. United States, 4 Cir., 135 F.2d 117, and cases cited; cf. Goodman v. United States, 8 Cir., 113 F.2d 914. The distinction between the two types of contracts is not always pointed out. In the case of United States v. Bostwick, 94 U.S. 53, 66, 68, 24 L.Ed. 65, the court recognized an implied obligation upon the part of the United States as lessee not to commit voluntary waste. This case arose in the Court of Claims which has no cognizance of contracts implied in law. United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911; cf. Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 395, 59 S.Ct. 516, 83 L.Ed. 784; Crouch v. United States, D.C., 31 F.2d 211; Gulf Transit Co. v. United States, 43 Ct.Cl. 183, 198, 199. The obligation not to commit waste takes its rise from the contract between the parties and inasmuch as a like obligation has been treated as one implied in fact in the Court of Claims (United States v. Bostwick, supra; Italian National Rifle Shooting Society v. United States, 66 Ct.Cl. 418) it

would seem that this court has jurisdiction of the present suit under the Tucker Act.

■ There remains in the same connection the question: Can the plaintiff here sue in view of the provisions of 31 U.S.C.A. § 203, which provides that all transfers and assignments made "of any claim upon the United States, * * * shall be * * * void, unless they are * * * made * * * after the allowance of * * * a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof"? The answer to this question is in the affirmative under the authority of Western Pacific Railroad Co. v. United States, 268 U.S. 271, 275, 45 S.Ct. 503, 69 L.Ed. 951; In re Pottasch Bros. Co., Inc., D.C., 11 F.Supp. 275, affirmed 2 Cir., 79 F.2d 613, 101 A.L.R. 1182. Section 203 does not apply to a transfer of a claim through a judicial sale under order of the court as is the case here. Such a transfer is not a voluntary assignment such as the statute makes void; it is an assignment by operation of law and not in violation of the section. Western Pacific Railroad Co. v. United States, supra; In re Pottasch Bros. Co., Inc., supra; Davis Sewing Machine Co. of Delaware v. United States, 60 Ct.Cl. 201, 221.

This brings us to the question of damages. The government does not contend that all the damage that existed in the premises when it left was caused by the elements and reasonable wear and tear, although it strongly contends, and with justification, that many of the cracks in the building were due to its settling. It was evident from the proof that considerable wear and tear was caused by the contemplated use to which the building was put. The question here of fair compensation for the damage is not determinable with mathematical accuracy. The court is compelled to rely to a great extent on the opinion of experts as to the cost of repairs after allowance for damage caused by wear and tear. It must use its common sense and do the best it can in an effort to do justice to the parties. The Court is in no different position than a jury would be with the same problem.

In this case, because of the wide divergence in the claims of the parties, the court took a view of the premises and in that manner got a far better picture of the damage than was reflected in the photographs which were admitted as fair representations of practically all the claimed damage.

The plaintiff presented as its single witness with respect to this issue an architect and structural engineer together with some photographs which the witnesses for the government, who were in a position to know, testified fairly represented the damage. The plaintiff's engineer testified he visited the premises in 1941 and that in his opinion a fair estimate for the damage was $6,150. He testified that amount would be the cost of making repairs—to restore the building to the condition it was in when new. He made no allowance for wear and tear or depreciation from conditions over which the defendant had no control. Also the witness presented no work sheets of any sort and had only "a vague recollection" of ever having any such. His estimates in the main were "lump sum estimates", e.g., "Repairs to all metal work including doors and duct work—$1,950; "Repairs to brick work—$1,550"; "Painting doors, duct work, terra cotta partitions, and concrete work—$525". The cost of replacing cracked walls was also included in this witness' estimate after an assumption that the condition was caused by the defendant's negligence. When the witness attempted to break down these figures on the court's suggestion that the blanket figures were hardly convincing, the witness had nothing to rely on but the photographs and his memory. That he was not too convincing is not surprising as the trial took place about 2½ years after his view of the premises.

As a result of this testimony, the court with counsel for the parties made an inspection of the whole building and damage claimed by the plaintiff. True there were bags of wool stored against ducts and walls claimed to have been damaged by the defendant, and which undoubtedly were, but, on the whole, the court, with the photographs at hand, was not prevented from obtaining a rather comprehensive view of the damage claimed to have been caused by the government's employees.

■ The government presented as its main witnesses with respect to the cost of repairs one Brown, an expert construction engineer, for the past thirteen years with the federal government, and one Poorvu, a general contractor and builder for many years, both competent to testify with respect to the issue involved. Brown testified that it would cost $1320 to restore the building to its original condition not including a concrete ramp that had been damaged, and that from this figure there should be an allowance of 30% for wear and tear, making a total of $924. In addition, he added $180 for the damage to the concrete ramp. The government was clearly liable for this latter damage. This made his grand total for repairs $1,104. The witness Poorvu testified the cost of repairs would be $1,732.50 without any allowance for wear and tear. Brown also testified and I find it as a fact that the practically vertical cracks in the building on the second and third floors were due to the settling of the building.

Other witnesses for the government testified, without contradiction, that there were garaged in the building in question an average of 282 trucks of one-half to three-ton capacity for the thirteen years the government occupied it and during the period of occupancy over five million trips were made by the trucks in and out of the building. Some damage was inevitable, and I find, considerable of the damage to concrete columns was caused by a reasonable use of the premises by these trucks.

■ What is a reasonable amount for the recoverable damage in the circumstances here? What will compensate the plaintiff here for the damage caused by the defendant with due allowance for damage caused by wear and tear from the contemplated use of so many trucks together with an allowance for damage caused to the building by age and the elements? Age and natural conditions had some effect; they caused, I find, the vertical cracks in the concrete building. Costs of replacing walls where these cracks appeared which the plaintiff's expert charged to the defendant are not properly chargeable to the latter. The trucks caused considerable damage to concrete pillars that is not chargeable to the defendant. These were due to a reasonable use. The expert for the plaintiff made his blanket estimate out of all proportion. A visit to the premises convinced me of this. There was no duty on the defendant to construct a new building for the owner. Its obligation was to pay for the damage done less whatever damage was caused by the government's agents in a reasonable use of the premises for a garage of the nature contemplated by the parties. United States v. Bostwick, supra, 94 U.S. at page 69, 24 L.Ed. 65. There should be no allowance for the cracked walls caused by a settling of the building.

■ I find that $1,600 would be fair compensation under all the circumstances.

Judgment will be entered in this amount for the present plaintiff, The New Rawson Corporation, when an amendment to the present complaint is presented and allowed by the court in which it is alleged in substance that The New Rawson Corporation is the owner by operation of law of the claim of the Rawson Realty & Construction Co., Inc., against the United States for the untenantable use of the premises 176–194 Ipswich Street, Boston, Massachusetts.

No costs. Rule 54(d), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.