## OZANIC v. UNITED STATES.

### THE PETAR.

No. 125–198.

United States District Court
S. D. New York.
March 10, 1949.

Bigham, Englar, Jones & Houston, of New York City, for petitioner.

John F. X. McGohey, of New York City (Edward L. Smith, Sp. Asst. to the Atty. Gen., of counsel), for the United States.

RIFKIND, District Judge.

Shipping Assets Clearing, Ltd., a British corporation, moves for admission as intervening petitioner and for a decree directing payment to itself as the true party in interest, of the recovery heretofore adjudged against the United States in favor of libellant as bailee of the S. S. Petar, sunk in collision with a U. S. Naval Tanker. Issues of fact having arisen, they were tried to the court.

Petitioner is the assignee of the claim by assignment from the Yugoslav Government, which had nationalized the Yugoslav

corporate owner of the Petar, together with all its claims and other assets, before May 23, 1947, when the recovery herein was decreed. The assignment was made pursuant to an overall shipping settlement agreement among the Yugoslav Government, the British Government, the several nationalized Yugoslav shipping corporations and various non-Yugoslav private parties who had interests in, liabilities to, or claims against the Yugoslav corporations. The agreement was signed July 31, 1947, and became fully operative under its terms on October 20, 1947. The specific assignment of the Petar claim was made August 26, 1947.

On July 19, 1948, the Governments of the United States and Yugoslavia, in connection with and as part of an agreement adjusting and settling the lend-lease account between the parties, entered into an agreement concerning mutual obligations and claims whereby, inter alia, they mutually waived all claims arising out of maritime collisions occurring between 1941 and 1946. The Petar collision occurred in 1942. The Department of State of the United States declares by letter signed for the Acting Secretary of State, that the Petar claim is " * * * therefore waived by the Yugoslav government under section 8e of that agreement."

The procedural propriety of intervention at this late stage of these proceedings (nothing remains to be done but to enter judgment upon the mandate of the Court of Appeals which affirmed the judgment below) is not contested by the Government. It defends from two positions, that the Anti-Assignment Statute, 31 U.S.C.A. § 203, and the reciprocity provision of the Public Vessels Act, 46 U.S.C.A. § 785, bar the petitioner. Then it counterattacks with the contentions that the execution of the United States-Yugoslav agreement constitutes executive action in the field of foreign affairs which removes the claim from judicial cognizance, and that such agreement constitutes a settlement of the obligation with the assignor by the obligor without notice of the prior assignment to petitioner.

■ The first defense is good, unless some exception to the Anti-Assignment Statute is applicable, for the statute unequivocally declares all assignments of claims against the United States (with exceptions here inapplicable) null and void. National Bank of Commerce of Seattle v. Downie, 1910, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116.

■ Despite the broad sweep of the statutory language some exceptions have become well recognized. The statute has been restricted in its application to voluntary assignments. United States v. Gillis, 1877, 95 U.S. 407, 416, 24 L.Ed. 503; see Aetna Casualty and Surety Co. v. United States, 2 Cir., 1948, 170 F.2d 469, 471. Transfers by operation of law, Erwin v. United States, 1878, 97 U.S. 392, 24 L.Ed. 1065; assignments for the benefit of creditors, Goodman v. Niblack, 1880, 102 U.S. 556, 560, 26 L.Ed. 229; and transfers by judicial order, Price v. Forrest, 1899, 173 U.S. 410, 19 S.Ct. 434, 43 L.Ed. 749; New Rawson Corporation v. United States, D.C. Mass.1943, 55 F.Supp. 291, are not within the statute. Nor does the statute apply to a transfer resulting from the consolidation of two corporations. Seaboard Air Line Ry. v. United States, 1921, 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149.

Instructive is the similar construction given the statutory prohibition against assignment of government contracts. 41 U.S. C.A. § 15; Note, 52 Harv.L.Rev. 296 (1938).

■ Since the Yugoslav Government is recognized by the United States, the original nationalization of the Petar's corporate owner by the Yugoslav Government must be accorded respect, cf. United States v. Belmont, 1937, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134, and considered as a transfer by operation of law so as to be without the statute. But the same is not true of the Yugoslav Government's later assignment to the petitioner. Though made pursuant to an agreement to which the Yugoslav and British Governments were two of the parties, it was in its nature a voluntary assignment of a claim against the United States as much as if it had been made by a private person. While it is true that the transferor of the demand against the United States was a government and

that the transfer, therefore, represented an exercise of governmental power in the sense that an act of any kind by a government necessarily constitutes such exercise, nevertheless it seems to me that such an assignment was not one effected by "operation of law" [173 U.S. 410, 19 S.Ct. 438] as these words are used in the cited decisions of the Supreme Court. It certainly was not an involuntary act on the part of Yugoslavia.[1]

■ Exceptions to the Anti-Assignment Statute are occasionally allowed where they would not produce the evils at which the statute was aimed. Richmond Screw Anchor Co. v. United States, 1928, 275 U.S. 331, 341, 48 S.Ct. 194, 72 L.Ed. 303.

The purpose of the statute was to secure the United States Government against embroilment in conflicting claims and subjection to double liability, and to discourage the enlistment of improper influences in advocacy of the claims. Goodman v. Niblack, 1880, 102 U.S. 556, 560, 26 L.Ed. 229; cf. United States v. Crain, 8 Cir., 1945, 151 F.2d 606, 608, certiorari denied 1946, 327 U.S. 792, 66 S.Ct. 817, 90 L.Ed. 1019.

In this case, the evils at which the statute was aimed are blatantly proclaimed by this very contest, since the United States, through both its State and Justice Departments, considers that it has already satisfied the claim in question by diplomatic agreement with the assignor.

■ Suits pursuant to the Public Vessels Act, 46 U.S.C.A. § 781 et seq., such as this, have not been judicially exempted from the Anti-Assignment Statute, but since they are to be conducted in accordance with the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., it is reasonable to assume that if the Anti-Assignment Statute is inapplicable to the latter it is equally inapplicable to the former. More or less relevant to the question are Smith v. United States Shipping Board Emergency Fleet Corp., 1928, 2 Cir., 26 F.2d 337, cer-

tiorari denied 1928, 278 U.S. 628 49 S.Ct. 29, 73 L.Ed. 547; Seaboard Fruit Co., Inc. v. United States, D.C.S.D.N.Y.1946, 73 F. Supp. 730, 731, 732; Rhodes v. United States, D.C.E.D.N.Y., 1934, 8 F.Supp. 124; and The West Grama, D.C.S.D.N.Y., 1924, 1924 A.M.C. 1444.

The Smith case held that the question of assignment not having been raised below, it was not properly before the court for consideration, but went on to suggest what the Rhodes case subsequently held, that assignments of claims against the Emergency Fleet Corporation were not forbidden because the Fleet Corporation was an entity separate from the United States and thus not within the Anti-Assignment Statute, citing Charles Nelson Co. v. United States, D.C.W.D.Wash., 1926, 11 F.2d 906. The Seaboard cases held the assignment of a claim against the United States good on the authority of The West Grama. This last case held that a tug, as assignee of its tow, might sue the United States for collision damage despite the Anti-Assignment Statute, because the provisions of the Suits in Admiralty Act, "That in cases where if such vessel were privately owned or operated * * * a proceeding in admiralty could be maintained * * * a libel in personam may be brought against the United States * * *", and "That the provisions of all other Acts inconsistent herewith are hereby repealed" are " * * * sufficiently sweeping to * * * allow the courts of admiralty to enforce against the Government claims transferred by assignment which may be asserted against all other persons." The West Grama, supra, 1924 A.M.C. at pages 1445–1446. The basic premise of this decision requires examination, since no authority was cited and the case has apparently been followed but once.

■ The Suits in Admiralty Act contained the following provision: "Such suits shall proceed and shall be heard and de-

---

[1] Perhaps the situation would be different if Yugoslavia had enacted a law requiring the Yugoslav owners of foreign claims to assign them to petitioner, and this claim had been thus assigned. The case does not present such a set of facts. Nor should the fact that the British Government was a party to the agreement be of concern to the court. Insofar as that may be of interest to the political arm of the United States Government, diplomatic as opposed to judicial action is not precluded by the decision reached.

termined according to the principles of law and to the rules of practice obtaining in like cases between private parties." 46 U.S.C.A. § 743.

Other statutes enacted after the Anti-Assignment Statute assimilate the liability of the United States to that of a private person in similar language. The Tucker Act, 24 Stat. 505, as amended, 28 U.S.C.A. § 41(20), revised, 1948, 28 U.S.C.A. § 1346, formerly provided that the district courts should have jurisdiction over certain claims, not sounding in tort, against the United States "in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable * * *" and "That all laws and parts of laws inconsistent with this act are hereby repealed." 24 Stat. 508. This language did not overcome the bar of the Anti-Assignment Statute. Emmons v. United States, C.C.D.Or., 1911, 189 F. 414; cf. United States v. Crain, 8 Cir., 1945, 151 F.2d 606, 608, certiorari denied 1946, 327 U.S. 792, 66 S.Ct. 817, 90 L.Ed. 1019.

The Tort Claims Act, 28 U.S.C.A. § 931 et seq., revised, 1948, 28 U.S.C.A.1346, 2674, provided that the district courts "* * * shall have exclusive jurisdiction to hear, determine, and render judgment on any [tort] claim against the United States * * * under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances * * *". Except for the absence of words of repeal, this language appears to be broader than that contained in the Suits in Admiralty Act. See Hill v. United States, D.C.N.D. Tex., 1947, 74 F.Supp. 129, 132, affirmed, 5 Cir., 171 F.2d 404. But see Aetna Casualty & Surety Co. v. United States, D.C.E.D. N.Y.1948, 76 F.Supp. 333, reversed 2 Cir., 1948, 170 F.2d 469.

Nevertheless, under this language, construed in the light of the fresh and abundant legislative history, not all courts are agreed that even insurer-subrogees may sue, the courts disagreeing whether the subrogation is to be treated as, or as analogous to, assignment by operation of law and thus within that exception to the Anti-Assignment Statute.

Compare Aetna Casualty & Surety Co. v. United States, supra; Employers' Fire Ins. Co. v. United States, 9 Cir., 1948, 167 F.2d 655; Old Colony Ins. Co. v. United States, 6 Cir., 1948, 168 F.2d 931, with Hill v. United States, supra; see Niagara Fire Ins. Co. v. United States, D.C.S.D.N.Y. 1948, 76 F.Supp. 850, 857; 9 Fed.Bar J. 27 (October 1947).

None of these cases decides that the Tort Claims Act has repealed the Anti-Assignment Statute so that a mere voluntary assignee may sue. Where the subrogation is clearly by operation of law, the insurer may sue under the Suits in Admiralty Act. United States Fidelity & Guaranty Co. for Use of Walsh, v. United States, D.C.S.D.N.Y.1944, 56 F.Supp. 452, affirmed as modified United States Fidelity & Guaranty Co. v. United States, 2 Cir., 1945, 152 F.2d 46.

The only distinction of substance between the Suits in Admiralty Act and the Tort Claims Act is the language in the former expressly repealing inconsistent legislation. The West Grama relied upon the words of repeal. I confess my inability to discover any inconsistency between the grant of power to sue conferred by the Suits in Admiralty Act and the Anti-Assignment Statute. I see no necessary logical connection between the privilege to sue and the power to assign. Cf. United States v. Gillis, 1877, 95 U.S. 407, 415, 416, 24 L. Ed. 503.

No such inconsistency was discovered by the courts under the Tucker Act, which did contain a repealer of inconsistent laws. Nor can it be asserted as a general proposition that claims in admiralty are so distinguishable from other classes of claims against the government that with respect to the former the evils envisaged by the

Anti-Assignment Statute are not to be apprehended.

■ Some evidence that the Congress has continued to assume the operative effect of the Anti-Assignment Statute is provided by its failure to establish any general procedure for giving notice of assignment of claims against the Government. The significance of this omission is intensified by the Congressional insistence upon detailed and multiple notice to no fewer than three separate Government agents and agencies when it amended the statute to permit the assignment of contract claims to banks and financing agencies. 31 U.S.C.A. § 203, 54 Stat. 1029, 61 Stat. 501. When Congress has foreseen a need for notice to the Government, it has specified the recipient thereof from among the swarm of Government officials.[2]

■ The Anti-Assignment Statute being plain on its face, there being no binding judicial authority rendering the statute inapplicable, no specific repeal by Congress, no moving policy by reason of which to excavate a circumventing channel about the statute, and there being good reason to anticipate the occurrence of the evils sought to be avoided if such a channel were to be opened for the petitioner, sufficient reason exists for the denial of petitioner's intervention.

■ The Government asserts as a further and independent ground for the denial of the motion that it did not receive notice of the assignment before it settled with the assignor. It may be that the proper officer to be given notice of the assignment was the United States Attorney representing the Government in this case, or the Attorney General. They are the officers required to be served with the original libel, 46 U.S.C.A. § 742, and the Attorney General is authorized to settle maritime claims, 46 U.S.C.A. § 786, for which purpose he is presumably entitled to know who owns the claim. From all that appears, neither officer was informed or knew of the assignment before the United States-Yugoslav agreement was signed. Assuming, however, that the Secretary of State was a proper notificant, as petitioner asserts, the fact is that he did not receive adequate notice.

The specific assignment of the Petar claim, dated August 26, 1947, was not brought to the attention of any Department of the United States Government before the United States-Yugoslav agreement was signed, nor, apparently, until this motion for intervention was made. On April 23, 1947, before the Yugoslav-British agreement was made, an attorney whose firm represented petitioner and also a company called Combined Argosies, Inc., filed with the Foreign Funds Control Department of the U. S. Treasury a memorandum objecting on behalf of Combined Argosies, Inc., to the issuance of a proposed license to "unfreeze" certain impounded Yugoslav funds, which memorandum summarized that proposed agreement. In March, 1948, a representative of Combined Argosies, Inc. left at the Yugoslav "desk" of the State Department a copy of the Yugoslav-British agreement. This copy reached one Herman, assistant to the Legal Adviser in the State Department, who testified that he examined it cursorily and that he did not discover that it related to the Petar claim. His cursory examination did not indicate to him that the United States was concerned therewith. Though he realized that it dealt with many Yugoslav claims, one can hardly blame Herman for not suspecting

[2] Cf., e. g., 46 U.S.C.A. § 288 (notice of abandonment of a vessel to be given the district collector of customs); 35 U. S.C.A. § 70 (Comm'r of Patents to be notified of patent infringement suits); 35 U.S.C.A. § 63 (Comm'r of Patents to be notified of suits to obtain patents); 26 U.S.C.A. § 274 (trustee or receiver must notify Commissioner of Internal Revenue of adjudication of bankruptcy or appointment of receiver); 48 U.S.C.A. § 471f (to avoid further liability, written notice of surrender of grazing land must be given the Secretary of the Interior); 28 U.S.C.A. § 753 (notice of application for an order of sale or delivery made in vacation must be given the U. S. Attorney in an admiralty case involving the United States); 46 U.S.C.A. § 740 (notice of claim for damage caused by United States vessel must be given the Federal agency owning or operating such vessel six months before suing the United States).

that the British Government had bought up for itself and its nationals Yugoslav claims against the United States when it must have known that Yugoslavia was indebted to the United States on lend-lease accounts. Herman was then and continued to be one of two officials who negotiated the United States-Yugoslav agreement which was signed on July 19, 1948. On June 17, 1948 he presented to the Yugoslav negotiators a list of Yugoslav claims against the United States, including the Petar claim, which the United States considered to be covered by the proposed United States—Yugoslav agreement. The Yugoslavs at no time made any response addressed to this list. On March 30, 1948 the attorney previously mentioned filed an application addressed to the Secretary of the Treasury, "Care of the Federal Reserve Bank New York", on behalf of petitioner, for a license to obtain "frozen" Yugoslav funds. In connection with this application a meeting was then held at the State Department, on April 21, 1948, with officials thereof at which a copy of the Yugoslav-British agreement was in the possession of these officials and was discussed in connection with the aforementioned license. The Petar claim was mentioned at the conclusion of the discussion by the attorney for petitioner as "being within the ambit of the agreement" but the subject was not pursued because the State Department official primarily concerned with it was not present. Subsequently further contacts between petitioner's attorney and the Treasury Department resulted in the granting of the license by the Treasury Department.

The assignee has the burden of proving that the obligor had notice of the assignment before it settled with the obligee. Heermans v. Ellsworth, 1876, 64 N.Y. 159. I conclude from the evidence recited that the petitioner has failed to sustain that burden. The respondent is, therefore, not liable to the petitioner. Restatement of Contracts, § 170(2) (a).

It is unnecessary to deal with the other arguments proffered by the respondent.

The petition for intervention is denied. That petition being denied, petitioner's motion for a decree in its favor must also be denied.