PAR-X UNIFORM SERVICE CORP., Appellant, *v.* EMIGRANT INDUSTRIAL SAVINGS BANK, Respondent, et al., Defendants.

First Department, February 9, 1945.

*Max J. Gwertzman* for appellant.

*John E. McAniff* of counsel (*Joseph A. Doran* with him on the brief; *Edwin A. Berkery,* attorney), for respondent.

CALLAHAN, J.   This action was brought by a tenant against its landlord to recover damages claimed to have been suffered

by the tenant when a pipe burst in the building where it occupied a loft, resulting in injury to its stock of merchandise.

The trial court dismissed the complaint holding that plaintiff had not established that defendant's negligence had caused the injury, and, further, that plaintiff was not the real party in interest.

The determination that plaintiff had failed to establish defendant's negligence was based on a finding that it had not proved by a fair preponderance of the evidence that the water pipe had been caused to burst by the freezing of its contents, as claimed by the plaintiff.

That a pipe under defendant's control had burst causing damage to plaintiff's goods was not disputed, nor was there any substantial dispute concerning many of the attending circumstances.

Plaintiff occupied a loft on the fourth floor of the premises 450 West 31st Street, which was one of a group of three buildings heated solely by a single central heating plant, owned and controlled by the defendant landlord, who likewise owned and controlled a sprinkler system maintained throughout the building.

Plaintiff had left its premises in good order on Saturday, December 19, 1942. When its loft was opened on Monday morning, December 21st, it was found that water had frozen in six to eight traps attached to pressing machines in plaintiff's premises. Shortly after 9:00 A.M. on Monday morning, which was several hours after heat had been turned on, it was noticed that water was also flowing from the fifth floor into the loft occupied by plaintiff. It was this water that caused the damage sued for. The loft above was locked, being used by another tenant for storage purposes. After some difficulty, it was entered, and it was found that an unprotected six-inch riser, part of the sprinkler system, had broken or cracked about three feet below the ceiling of the fifth floor. The principal issue litigated was the cause of this break.

On Saturday, December 19, 1942, the outside temperature had dropped from 22 degrees above zero to 8 degrees above zero; on Sunday, December 20, 1942, the temperature ranged from 8 degrees above zero to 3 degrees below zero; on Monday, December 21, 1942, between 1:00 A.M. and 9:00 A.M., the temperature ranged from 1 degree below zero to 8 degrees above zero. Despite these low temperatures, no heat was furnished to the building by defendant. Following its usual custom, it had shut off the heat on Saturday about 6:30 P.M., and had supplied no heat until early the following Monday morning.

The trial court held that it could not fairly be found on the record that plaintiff had sufficiently excluded other possible causes for the occurrence than defendant's negligence. We hold that all the surrounding circumstances herein indicate that the riser had burst due to freezing of water therein. Some of these circumstances were: the temperature prevailing outside and the absence of heat in the building for approximately thirty-six hours; the presence of frozen water in the numerous traps in plaintiff's loft; the fact that a second pipe in one of the group of buildings heated by the same central plant had frozen; and the circumstance that the water did not flow from the broken riser until after the building had been heated for several hours, which would indicate that it began to flow after the thawing of a frozen pipe. If the break in the pipe had been caused by stress of the floors against the riser, as claimed by defendant's expert, water would have flowed out immediately. It would be a very unusual coincidence that such an injury should have occurred so as to permit water to leak from the riser at about 9:00 A.M. on the day in question, although the circumstances which might have caused building stress appear to have been the same for years prior to the date involved.

The defendant contends that a finding that freezing had occurred was not justified in the absence of proof of the precise room temperature. We think that judicial knowledge may be taken of the fact that outside temperatures sufficiently influence the temperatures within an unheated building so as to cause freezing therein, where for a sufficient period of time, the outside temperatures remain as low as found here.

Having determined the cause of the break, we readily find that defendant's negligence was established. The heating plant and the sprinkler system were entirely within the defendant's control. Defendant was responsible for the exercise of reasonable care in the maintenance thereof. Although its leases required the furnishing of heat during business hours only, such covenants would not relieve the landlord of the duty of exercising reasonable care at all times. Where it rented lofts under the conditions found here, we think that the duty of reasonable care was not fulfilled, in view of the outside temperatures, in permitting the premises to remain without heat for thirty-six hours. Furthermore, subdivision c of section C26–1357.0 of the Administrative Code of the City of New York requires risers of sprinkler systems to be properly protected from freezing.

The second question presented is whether the plaintiff is the real party in interest.

After the damage had occurred to its merchandise, plaintiff presented claims to several insurance companies which had issued policies of sprinkler damage insurance covering same. These policies insured the plaintiff to the extent of the actual cash value of its property at the time of any loss or damage, but not exceeding the amount which it would cost to repair or replace damaged goods. Each policy contained a subrogation clause which provided that the company might require from the insured an assignment of all right of recovery against any third person for loss or damage to the extent of the payment made therefor by the company. The insurance companies eventually paid plaintiff $2,250. Plaintiff claims that before such payment, it had made an oral demand for a sum in excess of $4,000, but that the insurance companies had declined to pay more than $2,250, and that, accordingly, it had filed formal written proofs of claim for the sum last mentioned, as the whole loss sustained. The checks given in payment accordingly recited that they were in full settlement of all claims under the policies. At the time of the payment of the loss, the insurance company had required the plaintiff to execute loan receipts which provided that sums aggregating $2,250 were paid as loans, but that the amount of each loan was "repayable only in the event and to the extent that any net recovery is made by us from any person or persons, corporation or corporations, or other parties on account of loss by * * * sprinkler leakage * * *. As security for such repayment, we hereby pledge to said * * * insurance company whatever recovery we may make, and deliver to it herewith all documents necessary to show our interest in said property, and we hereby agree to promptly present claim, and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, through whose negligence the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in our own name, but at the expense of and under the exclusive direction and control of the said * * * insurance company."

Plaintiff's complaint herein alleged damages in the sum of $4,042.66. These damages were divided into four classes: (1) loss sustained to raw materials in the premises, amounting to $657.71; (2) damage to finished materials, in the sum of $93.75; (3) charges for laundering damaged finished garments in the sum of $2,291.20; and (4) an item of labor cost in the

sum of $1,000 for rearranging, re-sorting and renumbering a stock of garments (uniforms) in plaintiff's loft, which had to be moved to avoid water damage.

While the first two items of damage above referred to were no doubt included in the insurance coverage, and we may also assume that the third item was likewise covered, it is clear that at least the item of labor cost of $1,000 sued for in this action, was not so covered by the insurance policies.

It will thus be seen that the loss covered by the policies herein differed from the loss claimed in this action in nature and in amount. The policies covered only the actual cash value of the insured property at the time of loss, not exceeding the cost of repair, and provided that in appraising the loss, the sound value of the loss or damage to each item was to be the measure of any award under the policies.

Under these circumstances we hold that the defense that plaintiff was not the real party in interest was not sustained.

Section 210 of the Civil Practice Act provides that every action must be prosecuted in the name of the real party in interest with certain specified exceptions, including one where the action is brought by plaintiff as trustee of an express trust. If plaintiff remained the legal owner of any part of the claim sued on, it would be a proper party plaintiff irrespective of the interpretation to be placed upon the loan receipts. It seems clear that plaintiff did remain such an owner.

We have heretofore held under somewhat similar circumstances that, to establish the defense that plaintiff is not the real party in interest, it should be made to appear that the adjustment made with an insurance company was at least equal to the amount of the claim asserted by plaintiff against defendant. (*Henderson* v. *Park Central Motors Service, Inc.*, 225 App. Div. 788; see, also, *Steinhaus* v. *City of New York*, 179 N. Y. S. 195.)

It is to be remembered that the defense here is not one of nonjoinder of necessary parties. Whether such a claim could be asserted by way of defense so as to defeat this action in whole or in part, or might only be asserted in support of an application to join the insurance companies as necessary parties, need not be considered at this time. (See Civ. Prac. Act, §§ 192, 278; *People ex rel. Am. S. Refining Co.* v. *Sexton*, 274 N. Y. 304; *Blake* v. *Weiden*, 291 N. Y. 134, 138.)

Under the circumstance that only part of plaintiff's claim was covered by insurance, plaintiff retained legal title to the chose in action sued on. Accordingly we need not determine

whether, under a similar loan agreement, but where the loan equalled the sum claimed by plaintiff against defendant, the doctrine of subrogation would have effected an absolute assignment or transfer of title of the entire claim for damages. (*Lord & Taylor* v. *Yale & Towne Mfg. Co.,* 230 N. Y. 132; *Spencer* v. *Standard C. & M. Corp.,* 237 N. Y. 479; *Ocean A. & G. Corp.* v. *Hooker Electrochem. Co.,* 240 N Y. 37, 47; *Luckenbach* v. *McCahan Sugar Co.,* 248 U. S. 139; *Purdy* v. *McGarity,* 262 App. Div. 623; *Balish* v. *Advance Fuel Oil Corp.,* 266 App. Div. 683.) Nor need we determine at this time whether under the loan agreement, as to the portion of the claim covered by insurance, plaintiff had become the trustee of an express trust. (See *Hoffman House* v. *Foote,* 172 N. Y. 348; *Chicago &c. Railroad Co.* v. *Pullman Car Co.,* 139 U. S. 79, 87; *Norwich Union Fire Ins. Soc.* v. *Standard Oil Co.,* 59 F. 984, 987; *Firemen's Ins. Co.* v. *Bremner,* 25 F. 2d 75; 1 Scott on Trusts, §§ 2.1, 2.3, 15 and 16.) The answers to these questions would seem to depend upon the effect to be given to the agreements between the insurer and insured. (*Cocoa Trading Corp.* v. *Bayway Terminal Corp.,* 290 N. Y. 697, 865; *Banca C. I. Trust Co.* v. *Clarkson,* 274 N. Y. 69.)

We are not called upon to construe the present agreements further for the reason that in this case the defense that plaintiff was not the real party in interest was pleaded and urged upon the trial and on this appeal as a complete defense. The proof did not establish any such defense, and plaintiff is entitled to prevail.

The judgment should be reversed, with costs, and the case remanded for the assessment of damages by the trial court without a jury and judgment directed to be entered thereon in favor of the plaintiff for the amount found, with costs.

MARTIN, P. J., TOWNLEY, GLENNON and COHN, JJ., concur.

Judgment unanimously reversed, with costs, and the case remanded for the assessment of damages by the trial court without a jury and judgment directed to be entered thereon in favor of plaintiff for the amount found, with costs. Settle order on notice.