**NIAGARA FIRE INS. CO. et al. v. UNITED STATES.**

**COMMISSIONERS OF STATE INSURANCE FUND v. SAME.**

District Court, S. D. New York.

March 22, 1948.

Powers, Kaplan & Berger, of New York City, (George I. Gross and Robert Fishbein, both of New York City, of counsel), for plaintiffs Niagara Fire Ins. Co. and others.

Bernard Katzen, of New York City, (Harry Schechter and Arnold M. Herzog, both of New York City, of counsel), for plaintiffs Commissioners of State Insurance Fund.

John F. X. McGohey, of New York City, (Nathan Skolnik, Asst. U. S. Atty., of New York City, of counsel), for defendant.

MEDINA, District Judge.

In each of the above-entitled causes, plaintiffs move to strike defenses that the court lacks jurisdiction over the subject matter of the action; and, by cross-motion to dismiss, the United States challenges the power of the court to proceed and the sufficiency of plaintiffs' statement of their claim for relief. The cases were argued together; and it will be convenient to dispose of them together, as in each case the substantial question presented for decision is whether or not the Federal Tort Claims Act, 28 U.S.C.A. § 931(a), may be availed of by subrogees. In the Niagara case, subsidiary questions relate to the applicability of the Anti-Assignment Act, 31 U.S.C.A. § 203, and whether or not plaintiffs are the real parties in interest.

The Government's contentions have been sustained in whole or in part in the following cases: Old Colony Insurance Company v. United States, D.C.S.D.Ohio 1947, 74 F.Supp. 723; Rusconi v. United States, D.C.S.D.Cal. 1947, 74 F.Supp. 669; McCasey and Michigan Fire & Marine Ins. Co. v. United States, Civil No. 5991, E.D. Mich.[1]; Bewick v. United States, D.C., 74 F.Supp. 730; Home Insurance Co. v. United States, Civil No. 10418, D.C.D.N.J., October 27, 1947.[1] Aetna Casualty & Surety Co. v. United States, D.C.E.D.N.Y., 76 F. Supp. 333. A contrary view was taken in Grace v. United States, D.C.D.Md., 76 F. Supp. 174; Hill v. United States, D.C.N.D. Tex. 1947, 74 F.Supp. 129, and Wojciuk v. United States, D.C.E.D.Wis. 1947, 74 F. Supp. 914.

On July 28, 1945, prior to the enactment of the Federal Tort Claims Act, 28 U.S. C.A. § 921 et seq., a United States Army airplane, in non-combatant flight, while piloted by a commissioned Army officer acting within the scope of his employment, collided with the Empire State Building in New York City. The damage resulting from the impact and from fire was widespread and substantial. In the Niagara case we are concerned with property damage to the Empire State Building, owned by Empire State Inc., property damage to the building located at 10 West 33rd Street owned by Vincent Astor, and property damage to various tenants occupying the Vincent Astor Building. Each of the five assureds comprised within this group filed claims with the War Department under the Military Claims Act, 31 U.S. C.A. § 223b, for the total damage sustained by them, both insured and uninsured. The War Department in each case recommended to Congress payment of the uninsured portions of such claims and payment has been effected by appropriation acts of the 79th Congress (see H.R.Rep. 2655, 79th Cong., 2d Sess. [1946], to accompany H.R. 6683, p. 3). With respect to the insured portion of such claims, these were in due course paid by the insurance companies and, claiming ownership by subrogation, the insurance companies have brought this action against the United States, asserting liability under the Federal Tort Claims Act.

As there was at the time no general legislation waiving immunity in such cases, the insurance companies followed the

---

[1] No opinion for publication.

852

traditional course of seeking reimbursement by private act of Congress. In instances where, upon common law principles, the Government would have been liable but for the doctrine of sovereign immunity, it had long been the practice of the Congress to entertain and examine such claims whether by the original claimants or by subrogees, and to effect payment by appropriation.

The procedure for the payment of claims against the Government differed in respect of many classes of cases, prior to the enactment of the Federal Tort Claims Act. It would serve no useful purpose to describe this procedure in any detail, except in so far as it provides a background to aid in the ascertainment of the intention of the Congress in the portion of the Federal Tort Claims Act now under consideration. Suffice it to say, that certain categories of claims, in amounts not to exceed $1,000, might be disposed of administratively. Others followed the course of submission to the Congress, for reimbursement by private act. In the course of such administrative proceedings, the question had arisen as to the propriety and legality of making payments to subrogees. Thus the Small Tort Claims Act, 31 U.S.C.A. § 215, which became law on December 28, 1922, authorized the head of each department and establishment acting on behalf of the Government to determine any claim "on account of damages to or loss of privately owned property where the amount of the claim does not exceed $1,000," where the damage or loss was caused by the negligence of any officer or employee of the Government acting within the scope of his employment; and it was provided that the amount should be certified to the Congress and paid out of appropriations to be made therefor.

On June 29, 1932 the Attorney General issued an opinion, 36 Op.Atty.Gen. 553, to the effect that the statute covered claims by subrogees and that it was lawful and proper to certify claims of subrogees for payment. Similar rulings were made from time to time by the Comptroller General in connection with other statutes in pari materia, containing the language "on account of damage to or loss of privately owned property." 19 Comp.Gen. 503, 506-7, November 18, 1939; 21 Comp.Gen. 341, October 17, 1941; 22 Comp.Gen. 611, January 7, 1943. The significance of these rulings is not merely that they represent the considered views of law officers of the Government, but that these views were acted upon by the Congress in numerous instances by the making of appropriations for the payment of claims thus certified, in favor of subrogees.

In due course the claims of the subrogees herein for the portion of the property damage resulting from the Empire State Building crash which was covered by insurance and which had been paid by the various insurance companies, were examined and passed upon by the Committee on Claims of the House of Representatives of the 79th Congress. The exhaustive report of the Committee has been referred to above. The entire matter was reviewed in great detail; the reasons were stated for reporting favorably on the claims of the subrogees and it was recommended that legislation be enacted to effect payment of the claims. In the course of the discussion, the Committee commented on the fact that the War Department had settled administratively claims arising out of this disaster where the amount did not exceed $1,000, pursuant to the terms of the Military Claims Act, 31 U.S.C.A. § 223, and that such administrative payments had been made to subrogees as well as others. It was pointed out (Report, supra, p. 4) that the position of the War Department relative to the claims by subrogees in amounts exceeding $1,000 was unjustified and unwarranted. In any event, even the War Department had felt impelled to construe Section 223 of the Military Claims Act, as authorizing some payments to subrogees.

The Committee report is dated July 24, 1946, just nine days prior to the enactment of the Federal Tort Claims Act. The sequel is interesting. Thus having before it the favorable report of the Committee on Claims of the House of Representatives, recommending that these very subrogee claimants be paid, the Congress enacted the Federal Tort Claims Act, the provisions of which were made retroactive

as to all claims accruing on or after January 1, 1945. The Federal Tort Claims Act became Title 4 of the Legislative Reorganization Act of 1946, Public Law 601, 60 Stat. at Large 812, Section 131 of which provided that no private bill should authorize the payment of money for property damages, for personal injuries or death, for which suit might be instituted under the Federal Tort Claims Act. And, thereafter, no private bill was submitted to the Congress providing for the reimbursement of these claimants.

▮ In view of the fact that one of the principal reasons given for the passage of this comprehensive and far-reaching legislation was the shifting from the Congress of the burdensome and expensive task of passing upon the increasingly large number of claims for damages on account of injury to person or property; and the undoubted fact that a substantial number of such claims were and had for many years been those of subrogees, which were evidently acted upon and paid pari passu with those of original claimants; it is hard to find in the history of this legislation any justification or basis for distinguishing between original claimants and subrogees. As well stated by Judge Duffy in Wojciuk v. United States, D.C., 74 F.Supp. 914, at page 916: "Furthermore, the history of the tort claims legislation strongly indicates there is no proper basis for the narrow construction urged by the government. Congress was greatly burdened by the large number of claims, based upon alleged negligence by employees of the federal government, presented at every Congressional session. Senators and Representatives were forced to spend on these multitudinous claims an amount of time disproportionate to their relative importance. When the Legislative Reorganization Act of 1946, 60 Stat. 812, was passed, Title IV thereof was the Federal Tort Claims Act. Members of Congress undoubtedly sighed in relief over the shift of the burden of determining the merits of such negligence claims to the federal courts. It would be a strained and unwarranted interpretation of the intention of Congress to say it planned to give the district courts jurisdiction of cases brought by claimants originally suffering loss, but to reserve to itself the consideration of the claims of those standing in the shoes of original claimants by operation of law."

In the Commissioners' case plaintiffs are proceeding in behalf of three persons, Ann Carracio, Abe Gluck and Sarah Perkins, who allegedly sustained personal injuries in the Empire State Building crash. It is alleged that Empire State Inc., the owner of the building, carried Workmen's Compensation Insurance in the State Insurance Fund at the time of the accident, that Carracio, Gluck and Perkins were employed in different capacities in the building, that they were covered by this insurance, that each of them elected to take compensation but failed to sue the United States within one year from the accident, as a result of which their respective claims against the United States became subrogated to the State Insurance Fund. New York Workmen's Compensation Law, Consol.Laws, c. 67, Sec. 29, Subd. 2. The action was originally brought on behalf of four other persons (Mary Scannel, Samuel Watkinson, Betty Oliver and John Babjek) who had instituted separate actions, by their own attorneys. It was held that these individual claimants were the real parties in interest and defenses based on this claim were sustained, Commissioners of the State Insurance Fund v. United States, D.C.S.D.N.Y.1947, 72 F.Supp. 549, Holtzoff, J., and the action as to them has apparently been informally withdrawn or abandoned.

So much for background. The burden of the Government's position is that the statute is not in terms applicable to subrogees, that statutes in derogation of sovereignty are always strictly construed and that subrogees should not be included by implication or inference. The validity of this position depends upon the wording of the statute, 28 U.S.C.A. § 931:

"§ 931. Jurisdiction; liability of United States; * * *.

"(a) Subject to the provisions of this chapter, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, including the

854

United States districts courts for the Territories and possessions of the United States, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages: Provided, however, That in any case wherein death was caused, where the law of the place where the act or omission complained of occurred, provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons, respectively, for whose benefit the action was brought, in lieu thereof. Costs shall be allowed in all courts to the successful claimant to the same extent as if the United States were a private litigant, except that such costs shall not include attorneys' fees."

Whatever may be the case with legislation on other subjects, there is every reason to suppose that this particular statute was the result of the most skillful and deliberate draftsmanship and that in its final form it was the culmination of years of patient effort. Gellhorn and Schenck, Tort Actions against the Federal Government, 47 Columbia Law Rev. 722, 726 (1947); The Federal Tort Claims Act, 56 Yale L.J. 534, 535, and n. 10 (1947); Armstrong and Cockrill, The Federal Tort

Claims Bill, 9 Law and Contemp.Prob. 327, 328, and notes 1 and 6 (1942).

As indicated by the title to the Section, it covers two distinct but allied subjects, jurisdiction on the one hand and liability on the other. While the grant of power may not be increased by the language used to define the limits and measure of liability, it would be strange if the two were not closely coordinated in terms sufficiently general to cover the full area of the grant of power and to define the rule by which liability might be determined. The very nature of the task of draftsmanship required omission of specific cases of one kind or another, except as ruled out by Section 943, which enumerates the claims exempted from the operation of the chapter.

The clear import of this language is to include the case of subrogees. There is no ambiguity whatever. Nothing need be read in by implication.

Thus the District Court is authorized to adjudicate "any claim" for money only against the United States "on account of" damage to or loss of property or "on account of" personal injury or death caused by the fault of any employee of the Government acting within the scope of his office or employment, "under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred." Each of these subrogees is a claimant and each makes a claim herein. These claims are "on account of" damage to property, just as they would have been if pressed by the original claimants, in the absence of any subrogation. Indeed, the phrase "on account of" is singularly apt to express the notion of a broad inclusion. And this very phrase had served its purpose well in the earlier Small Tort Claims Act, 31 U.S.C.A. § 215, in connection with which the Congress had repeatedly approved its application to subrogees by approving numerous subrogation claims certified to it for payment under the terms of that legislation. H.R.Rep. 2655, 79th Cong., 2d Sess. 5, 13 (1946); Holtzoff, The Handling of Tort Claims

against the Federal Government, 9 Law and Contemp. Prob. 311, 318 (1942).

Moreover, the circumstances are such that the United States, "if a private person," would be liable to these plaintiffs "for such damage," in accordance with the law of the State of New York, where the catastrophe occurred. Ocean Accident & Guarantee Corp. v. Hooker Electrochemical Co., 1925, 240 N.Y. 37, 147 N.E. 351.

In the Aetna case it was held that the United States would not thus be "liable to the *claimant* for such damage," since the claim of a subrogee arises under the contract of insurance, which compelled payment in consideration of the premium. But the liability here asserted is not based upon the contract. It is precisely a liability "for such damage" as was suffered by the persons whose claims accrued "on account of damage to" their property at the moment of the crash. By operation of the law of subrogation these claims passed to the plaintiffs, who, in accordance with the law of New York, are claimants here against the United States because, if the United States were a private person, it would be liable.

The reverse of this situation is shown in Oahu Railway and Land Company v. United States, D.C.Hawaii, 73 F.Supp. 707. In that case, on October 9, 1943, an Army tank, while being operated upon a public highway in Honolulu collided with a bus operated by plaintiff, a licensed public carrier. One of the passengers was injured and later died. The representatives of the decedent sued plaintiff, alleging negligence by the bus driver; and the case was settled in February, 1947, after the Federal Tort Claims Act became effective. A release was given of all claims against plaintiff and against the United States. Recovery was sought against the Government for "contribution for the full amount" and this was rejected by the court on the ground that, even though the claim arose in 1947 at the time of the payment by plaintiff, the claim asserted was not one "on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government." The right to contribution is an independent right founded upon principles quite different from those upon which the right of subrogation is based. The obligation to respond in contribution arises only after one of several parties equally liable for the same debt pays more than his pro rata share of the common debt. The cause of action does not exist until such a payment is made. But here, by the operation of the doctrine of subrogation, the subrogee becomes the owner of the very rights of the individual who suffered injury to his person or property; they are not similar or analogous but identical.

No statutory definition of the words "claim" and "claimant" was necessary as contended by counsel for the Government; nor does there seem to be anything ambiguous about the phrase "would be liable to the claimant for such damage," as is suggested by the emphasis on the word "claimant" in the opinion in the Aetna case. The plain import of the language is that, if the claim be of the character described, jurisdiction may be asserted against the United States, if the circumstances are such that the United States would be liable under the local law. And the claim is one of the character described, as it is the very claim for damage to property which the owner of that property had at the time of the crash, and which passed by subrogation to the subrogees.

The last sentence of the section, relative to liability as distinct from jurisdiction, is similarly terse and unambiguous and it fits perfectly into the scheme of the section as a whole. Just as the District Courts are given jurisdiction to adjudicate on claims against the United States on account of certain specified torts, with the exceptions noted in Section 943, where the circumstances are such that the United States, if a private person, would be liable to the claimant, so it is declared that "the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances," except for interest prior to judgment and punitive damages. The liability of the United States is not defined by the first sentence nor is the jurisdiction conferred by the second; but the central core of meaning

856

is the same in each, namely, that where the United States would be liable for damage to or loss of property or on account of personal injury or death, if it were a private person, then in those cases, with the exceptions noted in Section 943, the person in whose favor such liability accrues may sue and recover in the proper District Court.

Counsel for the Government earnestly argue, as a corollary to the rule of strict construction of statutes in derogation of sovereign immunity, that there can be no waiver of immunity with respect to subrogees in the absence of a clause in the statute specifically and in so many words stating that subrogees may sue; and apparently this view has been adopted by at least one District Judge. Rusconi et al. v. United States, D.C.S.D.Cal., 74 F.Supp. 669. In view of the explicit language authorizing the prosecution of "any claim," it would seem that the shoe is on the other foot. If the literal meaning of the words of the statute plainly covers the case, subrogees may sue unless expressly excluded; and there is precedent for this in the text of the Foreign Claims Act, 31 U.S.C.A. § 224d, which contains the phrase "including claims of insured but excluding claims of subrogees." And the Foreign Claims Act is still in full force and effect, as the Federal Tort Claims Act expressly excludes "any claim arising in a foreign country," 28 U.S.C.A. § 943(k). There seems no more reason for making specific reference to subrogees than there would be to executors, administrators, guardians, committees of incompetents, and others who by state statute or common law in the various jurisdictions may be entitled, by operation of law, to recover on account of tortious injury to person or property. Nor is there anything in the rule of strict construction to warrant a court in finding some latent ambiguity in such common legal phrases as "claim" and "claimant," in the absence of something in the context to indicate doubt as to their meaning.

■ As said by Judge Cardozo, writing for the New York Court of Appeals in Anderson v. Hayes Construction Co., 1926, 243 N.Y. 140, 147, 153 N.E. 28, 29: "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced."

Perhaps too much stress has been laid during the oral argument and in the briefs on the Suits in Admiralty Act, § 2, 46 U.S.C.A. § 742. While it has been variously held that "the Tort Claims Act has the more far reaching language," Hill v. United States, D.C.N.D.Tex., 74 F.Supp. 129, 132, and that "the language of the Suits in Admiralty Act is much broader than that found in the Federal Tort Claims Act," Aetna Casualty & Surety Co. v. United States, D.C.E.D.N.Y., 76 F.Supp. 333, it would seem that, despite the differences in phraseology which one would naturally expect to find in statutes relating to such different subject matters, they both fit into the historical background of the waiver of sovereign immunity by the United States in such fashion as to indicate a satisfaction on the part of Congress with the formula "where the United States, if a private person, would be liable." The analogy is not complete, but it is suggestive. It is at least clear that under the Suits in Admiralty Act subrogation claims are cognizable. United States Fidelity & Guaranty Co. etc. v. United States et al., D.C.S.D.N.Y.1944, 56 F.Supp. 452, affirmed as modified 2 Cir., 152 F.2d 46; cf. Defense Supplies Corporation v. United States Lines Co., 2 Cir., 1945, 148 F.2d 311.

Accordingly, the plain meaning of the words of the statute, the intention of the Congress as manifested in its legislation on other allied and analogous subjects, the historical background of the Act itself and the reasons which led to its enactment, all point in the same direction. Section 931 must be deemed to have conferred upon the appropriate district courts jurisdiction to entertain and determine the claims of subrogees. This conclusion would seem also to dispose of the defenses to the effect that plaintiffs are not the real parties in interest.

■ There remains the contention of the Government that the complaint in the Niagara case should be dismissed because of the terms of the Anti-Assignment Act. I have nothing to add to the reasons given

for the rejection of this contention in Hill et al. v. United States, D.C.N.D.Tex., 74 F.Supp. 129; Aetna Casualty & Surety Co. v. United States, D.C.E.D.N.Y., 76 F.Supp. 333; and Wojciuk et al. v. United States, D.C.E.D.Wis., 74 F.Supp. 914, 915. As stated by Judge Duffy in the last cited case, "the anti-assignment statute applies only to voluntary assignments of demands against the government. It was not intended to embrace subrogation and other cases where a transfer of title has occurred by operation of the law."

While the claims asserted in the case of the Commissioners differ somewhat in character from the claims asserted in the Niagara case, the reasons above stated compel the same conclusion. The district courts are to have jurisdiction in the enumerated instances "where the United States, if a private person, would be liable to the claimant * * * in accordance with the law of the place where the act or omission occurred." The mere circumstance that the right of the Commissioners is created by an enactment of the legislature of the State of New York will not support a difference in result. That the United States, if a private person, would be liable in New York cannot be doubted. Commissioners of State Insurance Fund v. Gladstone, 1945, 186 Misc. 91, 61 N.Y.S.2d 792; see Sabatino v. Thomas Crimmins Construction Co., 1918, 102 Misc. 172, 175, 168 N.Y.S. 495.

The motions to strike defenses from the answers are granted; and the motions to dismiss are denied.

Settle orders on notice.