**ÆTNA CASUALTY & SURETY CO. v. UNITED STATES (POST OFFICE DE-PARTMENT).**

No. 25, Docket 21030.

United States Court of Appeals
Second Circuit.

Nov. 4, 1948.

Edward W. Springsteen, of New York City (William A. Hyman and Harold W. Hayman, both of New York City, of counsel), for plaintiff-appellant.

H. G. Morison, of Washington, D. C., and J. Vincent Keogh, of Brooklyn, N. Y. (Paul A. Sweeney and Alvin O. West, both of Washington, D. C., and Eli Resnikoff, of New York City, of counsel), for defendant-appellee.

Before L. HAND, Chief Judge, and CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

We think the dismissal was error. By the Federal Tort Claims Act,[2] a suit may be maintained against the United States "on any claim * * * for money only * * * on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred [and] * * * the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances * * *." There are certain express exceptions admittedly inapplicable

[2] 60 Stat. 843, 28 U.S.C.A. § 931(a), as it read at the time this action was commenced. The new Judicial Code, effective September 1, 1948, makes immaterial amendments in the wording of the statute. 28 U.S.C.A. §§ 1346(b), 2674.

here. The purposes of the Act were two: (1) to end the injustice visited upon persons injured by the torts of employees of the United States, and left without remedy other than an appeal to Congress, and (2) to relieve Congress of the burden of passing upon thousands of private claims presented to it. The latter object was emphasized by the passage of the Tort Claims Act as part of the Legislative Reorganization Act, intended to reform Congressional procedure to allow Congressmen more time for work on national legislation, and by the express provision of that Act forbidding passage of private bills authorizing payment of damages for which suit could be brought under the Tort Claims Act.[3]

The Act contains no mention of claims by subrogees or assignees, but, as Judge Medina has pointed out,[4] Congress had repeatedly acted upon the claims of insurance-company subrogees, and the compelling reasons which led to the enactment of the Tort Claims Act for claims presented by injured individuals apply equally where the claimant is a subrogee or assignee of plaintiff's type.

Were the United States a private person, plainly it would be liable to the plaintiff in the circumstances alleged in the complaint. Defendant's arguments, in effect, rest on the following basis: (1) The United States enjoys immunity from suit without its consent, since it is a successor to the English crown, and therefore to the doctrine that the monarch can do no wrong. (2) This doctrine—long ago severely criticized by Mr. Justice Wilson in Chisholm v. Georgia, 2 Dall. 419, 453, 1 L.Ed. 440—is so important and stubborn that any consent given by the United States (as a sort of monarch) must be construed in as niggardly fashion as possible.

On this basis—which we regard as untenable in the light of the language and purpose of the statute [5]—defendant urges that the plaintiff, suing in part for reimbursement for compensation paid, failed to bring its claim within the requirement that it be "on account of personal injury"; in other words, since neither the plaintiff nor its property was injured, this could not be a personal injury action. We cannot accept this narrow interpretation of the Act. Plaintiff's claim is founded on, limited by, and substituted for, Vambell's claim for personal injury. In particular, the state statute provides that, upon the failure of the injured employee to bring the action, "*the* cause of action" shall by operation of law be assigned to the insurance "carrier." Although as between Vambell and the plaintiff the final settlement may not be the same as if Vambell had brought the action, so far as the United States is concerned, the cause of action is one.

We reject, as the district court did, the suggestion that the assignment—as the New York statute calls this transfer—is void because not executed in accordance with the Federal Assignment Act.[6] That Act does not apply to involuntary assignments.[7] What is more, the assignment in this case is not voluntary: the claim passed to plaintiff, regardless of Vambell's intent or even of his knowledge that, by delaying, he lost his rights, except to share in any recovery that the insurance company may get, if it chose to sue. Moreover, even if the assignment were otherwise within the Assignment Act, we think the language and purpose of the Tort Claims Act more than sufficient to carve out an implied exception for this type of claim.

A more serious contention raised by the Government is that, if actions by assignees

---

[3] Legislative Reorganization Act of 1946, § 131, 60 Stat. 831. The background of the Act has elsewhere been fully discussed. See The Federal Tort Claims Act, 56 Yale L.J. (1947) 534; Gellhorn and Schenck, Tort Actions Against the Federal Government, 47 Col. Law.Rev. (1947) 722; Federal Tort Claims Act, 42 Ill. Law.Rev. (1947) 344.

[4] Niagara Fire Ins. Co. v. United States, D.C., 76 F.Supp. 850, 853.

[5] We consider both, of course; for we do not proceed on the principle that a court is to look at the statute only if its legislative history is ambiguous.

[6] R.S. § 3477, 31 U.S.C.A. § 203.

[7] Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229; Erwin v. United States, 97 U.S. 392, 24 L.Ed. 1065; Price v. Forrest, 173 U.S. 410, 19 S.Ct. 434, 43 L.Ed. 749.

are permitted, the government will lose its privilege of interposing a counterclaim against the employee. Although we do not know whether the Government intends to assert a counterclaim in this case,[8] we cannot reserve consideration of this argument until a case arises involving a counterclaim; we think Congress did not intend to make the "involuntary" assignee's right to sue dependent upon the government's assertion or non-assertion of a counterclaim against the employee.

██ The Act specifically confers jurisdiction on the district courts over any "counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action" under the Act,[9] thus providing for claims against the actual plaintiff; while by ordinary rules of court claims arising out of the same transaction may be offset. It is argued that, if the government wants to assert an unrelated counterclaim against the employee or seek from him more than the amount recoverable by the plaintiff, allowing this action might force the Government to bring a separate suit and pro tanto its right of counterclaim against the original claimant would be lost;[10] that is to say, to give full effect to this favored situation of the government, we must override as to subrogees and involuntary assignees the direction that we must treat the United States as we would a private individual.[11] We think, however, that the reiterated requirement that we should treat the United States like a private individual is the more fundamental, and the Congress did not intend to limit the jurisdiction of the district courts more than it is limited by the specific exceptions.

The other arguments of the Government are less impressive. Assignment of the cause of action may permit venue in a district other than that in which the original claimant could properly have brought the action. If Congress did not intend that result, it has not expressed its intention. The administrative problem of preventing suits by two persons for the same injury is difficult but it does not appear to be insurmountable; and, in the present case, at any rate, there is no chance of two suits, since the plaintiff must prove as part of his cause of action that the employee's action is barred.

██ Plaintiff is the only real party in interest. The New York statute gives it alone the right to sue, even though it may have to account for part of the recovery to the injured employee. To the extent the plaintiff must turn over its recovery to another, it is a "party authorized by statute" to sue in its own name, expressly designated the "real party in interest" by Federal Rules of Civil Procedure, rule 17, 28 U.S.C.A. None of the cases cited by the Government[12] involved plaintiffs so clearly authorized by statute to bring the action.

██ Since the Tort Claims Act gives the district court discretion to determine whether attorney's fees should be allowed to plaintiff's counsel,[13] there is no danger of excessive fees being granted plaintiff's attorney. The district court, of course, may consider the fact that the state statute

---

[8] The case is before us on a motion to dismiss, made before answer and thus before the government indicated whether it would make a counterclaim.

[9] 28 U.S.C.A. § 1346(c).

[10] We do not believe that this will in fact be a frequent occurrence; if the government will probably assert a counterclaim for more than the amount recoverable, we suspect that neither the injured person nor the insurer is likely to bring the action. Of course the government may assert a counterclaim arising out of the same transaction to the extent of the plaintiff's recovery. Clark, Code Pleading (2d ed. 1947) 679-682.

[11] It is perhaps arguable that, where the Government asserts a counterclaim in excess of the claim against it, the action must be dismissed if the original claimant is more than a necessary, but is an indispensable party under Rule 19 and cannot be joined; or it may be urged that permissive joinder under Rule 20 could be used by the government. We need not here consider those arguments.

[12] Dayton Veneer & Lumber Mills v. Cincinnati, N. O. & T. P. R. Co., D.C., 1 F.R.D. 444; Lloyd Moore, Inc. v. Schwartz, D.C., 26 F.Supp. 188; Par-X Uniform Service Corp. v. Emigrant Industrial Savings Bank, 268 App.Div. 699, 53 N.Y.S.2d 16.

[13] 28 U.S.C.A. § 2678.

allows plaintiff a portion of the recovery to cover its expenses.

Reversed and remanded.

L. HAND, Chief Judge (concurring in part).

I see no necessity for passing upon the question whether this action would lie at all, if the United States suggested that it had a counterclaim against Vambell. In that event it might have to sue twice upon the counterclaim, for nobody supposes that it can do more than use it against the plaintiff at bar as a set-off. Nor can we limit this possibility to cases where the counterclaim exceeds the main claim, for that may be entirely defeated and when it is, no part of the counterclaim will have been paid in the main action. I do not mean to suggest that I have any present opinion as to whether the phrase—"under circumstances where the United States, if a private person, would be liable"—should be held to overbear § 1346(c), relating to counterclaims. I have no such opinion, but in general I believe that courts should decide no more than is necessary to the disposal of the case before them. One never knows how differently upon another presentation the issue may appear; and, though it may be a confession of weakness, I can only say for myself that, after I have found enough on which to rest my decision, I feel a decided slackening of responsibility if I go further.