Bergan, J.
When the State undertakes to act as a landlord it drops in that relationship its immunities and privileges, and conducts its real property operation with the usual risks. All this, of coursé, is with its sovereign consent.
The State managed and controlled the Floyd Bennett Field Emergency Housing Project in Brooklyn, containing a number of apartments. In one of the apartments the plumbing froze and burst in very cold weather in December, 1948, and the claimants, who were the occupants of the apartment below, sustained water damage to their property for which they have had judgment for $2,400 in the Court of Claims. From this judgment the State appeals.
By the standard of responsibility applicable to a landlord we think the State is not liable for the damage sustained. The State controlled the heat in the project generally, and while there is testimony in the record that at times, and when the wind blew unfavorably, apartments in this part of the project were cold, no one has suggested that it would have been cold enough by insufficiency of heat alone to have caused pipes to freeze. The State controlled the flow of water in the project, but there is no proof of any defect in this respect.
The basis of the claim upon the proof in the record and as found by the Court of Claims, is that the tenant in the apartment where the freezing occurred neglected to close the windows when he left and remained several days away from the apartment; and the State had notice of the open windows and the tenant’s absence but took no steps to close the windows when, or before, the weather became very cold.
*598 From tMs the court found that the open windows were the cause of the freezing of the plumbing; and the conclusion was reached that the failure of the State to see that the windows were closed brought home a liability. The further conclusion that the State’s employees did not promptly enough stop the flow of water after discovery of the break has no support in the record.
A sweeping finding was made by the court that-“ for at least 2 months prior to ” the date of the freezing, which occurred December 26, 1948, the apartment where the break occurred “ had been unoccupied ” and the “ family resided elsewhere ”. "While this may be true generally, it is not the fact that the apartment was unoccupied in the sense no member of the family ever stayed there during this period.
The testimony is undisputed that Joseph V. Macehirella, the tenant in that apartment, was there from time to time, and on occasions a couple of times a week, and that he was there overnight one week before the break. He said he was not sure when he went out on that morning if he had closed the windows. What he did the last time he was there seems to be the only time relevant to this case.
The finding has been made that it was noticed by the attorney for the claimants who was a tenant in the building and who testified, that on December 18th three windows of the Macehirella apartment were open from eight to ten inches, and that there was ice and snow on the sill and around the latch; and that two days later the witness “ informed the resident manager of the above facts and that the apartment was unoccupied.” The actual testimony, however, is that Mr. Sojka said to the resident manager that “ ‘ those windows were open a long time * * * and he [Macehirella] doesn’t come to the apartment.’ ”
The court has also found that “ the matter ” was “ called to the attention of ” a Mr. McKeen, the maintenance man. The testimony in this respect is that the attorney, Mr. Sojka, told the maintenance man “ about the windows ” on the Friday before Christmas. The record shows there were some 252 apartments and 1,500 windows in the emergency housing project.
Assuming that the State’s employees had notice a week before the freezing that the windows in the apartment were open and that the apartment was not continuously occupied at this period, an assumption which takes a view of a disputed record most favorable to claimants’ case, there is no responsibility shown for the damage consequent on the freezing.
*599 A landlord’s responsibility has some traditional and well-recognized limitations. He is responsible for a discovered or discoverable defect in the part of the premises over which he keeps control; he is responsible for negligence in supplying services or facilities undertaken by him.
Even for damage arising from portions of the premises which the landlord keeps under his own hand, liability does not arise from the acts of third persons in such portions unless the landlord has a reasonable chance to see and correct an obvious danger.
An example of this is Greenberg v. Man (119 N. Y. S. 244). There the landlord controlled a common hallway. Some third person left planks in the hallway, causing plaintiff’s injury. The Appellate Term held there was no responsibility, and Judge Lehman, then in the Supreme Court, remarked (p. 245) that the landlord was “ not required to police the hallways ” to prevent obstructions by tenants or others.
Where the acts of third persons in the use or operation of equipment under the general control of the landlord are the immediate cause of damage the landlord is usually not liable, and the theory of this is that the intervening act is the proximate cause of the damage.
Where a landlord had control of water pumping equipment which became cracked, and had shut off the water in the system, a change in temperature causing the water to rise in the pipes and overflow through the crack was held not the responsibility of the landlord who was not chargeable with the failure of plumbers to discover the break (Cohen v. Cotheal, 156 App. Div. 784, affd. 215 N. Y. 659).
The intervention of other causes leading to damage has led the decisions in the same direction upon an absence of proximate cause. The Appellate Term, First Department, in Mendelson v. Bona (63 N. Y. S. 2d 410) held that where a toilet overflowed in an apartment and it was shown that the use of the apartment was controlled by a tenant and the toilet was obstructed by a rag, there was no landlord responsibility for damage to another tenant from overflow, and judgment was directed for defendant. The theory is further illustrated in Cardona v. Barbat (56 N. Y. S. 2d 451) and in Armstrong v. Milgrim (172 N. Y. S. 454) in the Appellate Term, First Department.
The decision in this department in Leonard v. Gunther (47 App. Div. 194) and in the First Department in Tobias v. Lewis (182 App. Div. 598, affd. 230 N. Y. 571) seem to us closely in point on the problem. In the first case pipes froze and there was *600 resulting water damage because a tenant entitled to the exclusive use of that part of the premises “ failed to warm the room ”. There was proof that the water had frozen at least twice before, but there being no defect shown in the pipes or structure, the proximate cause in the opinion of Kellogg, J. was the “ failure of duty on the part of the tenant ” and not the landlord, (p. 195.)
The Tobias case (supra) is more closely analogous in relevant principle. Tenants in an apartment made a practice of placing boards and other belongings in violation of the building code on fire escapes. The Appellate Division was of opinion that the landlords had specific notice of the practice, but held there was no resulting liability in tort to the daughter of a tenant injured on the sidewalk by a board falling from the fire escape where it had been placed by another tenant.
Reliance is placed by claimants on Par-X Uniform Service Corp. v. Emigrant Ind. Sav. Bank (268 App. Div. 699). But that case is distinguishable on the ground that the failure of the landlord to supply heat, a subject wholly in its control, was the cause of the break and was without any intervening act of other parties.
There is, of course, a difference of fundamental proportion between a danger from a defect in a facility controlled by a landlord and a danger created by the way in which a tenant uses a facility otherwise safe enough. The open door, the water faucet or gas control left turned on, the fire alarm, or the open window would all be instances in which it would be supposed that there would be no landlord responsibility where a tenant’s negligent use caused damage.
The judgment should be reversed on the law and the facts and the claim dismissed; the court should disapprove so much of the decision as finds that there was a failure by the State expeditiously to turn off the water after the break was discovered and that the Macchirella apartment was unoccupied for two months before the break; and a new finding made that no member of the Macchirella family was present in the apartment for one week before the break; and should affirm the other findings of fact consistent with this decision.
Foster, P. J., Deyo and Coon, JJ., concur; Heffernan, J., dissents, in the following memorandum: I dissent and vote to affirm the judgment in this case. It seems to me that from the proof in the record the Court of Claims was amply justified in finding that defendant was negligent (Par-X Uniform Service Corp v. Emigrant Ind. Sav. Bank, 268 App. Div. 699).
*601 Judgment reversed, on the law and facts, without costs, and the claim dismissed. The court disapproves so much of the decision as finds that there was a failure by the State expeditiously to turn off the water after the break was discovered, and that the Macchirella apartment was unoccupied for two months before the break; and a new finding made that no member of the Macchirella family was present in the apartment for one week before the break occurred; the other findings of fact consistent with this decision are affirmed.